UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMANDA GOVERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-01270-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Amanda Govero ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

I. **PROCEDURAL BACKGROUND**

In January 2018, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since April 15, 2014, due to chronic obstructive pulmonary disorder (COPD), being on oxygen, sleep apnea, worsened depression, high blood pressure, scoliosis, bone spurs in the spine, stenosis, and crumbling bones in the neck. (Tr. 241-55, 279). Her applications were initially denied. (Tr. 146-47). On May 16, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 158-61). On November 18, 2019, the ALJ held a hearing on Plaintiff's claims. (Tr. 58-91). On December 17, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 17-39). On July 17, 2020, the Appeals Council denied Plaintiff's request for review of the decision. (Tr. 5-10). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

II. **FACTUAL BACKGROUND**[2]

At the November 2019 hearing before the ALJ, Plaintiff testified as follows. She has worked in the past mostly at gas stations, doing cashier work and stocking, most recently in 2014. (Tr. 63-64). Since 2014, her back and her memory have been the biggest problems that prevent her from working, and she testified about various physical and mental health problems. (Tr. 65-86). With regard to her mental health problems, she testified that she has depression and anxiety and that the treatment she has gotten is helping. (Tr. 74). However, she testified that even with her medication, she is constantly depressed, which makes her want to sleep, makes her not feel good about herself, makes her want to stay in, and makes her not want to associate with people anymore.

---

[2] Because Plaintiff's arguments are related to her mental impairments, the Court focuses primarily on facts relevant to those impairments.

2

(Tr. 74). She has lost all her friends, which sometimes makes her want to die. (Tr. 75). She has problems concentrating and focusing, and she carries around a notebook where she writes things down so she does not forget. (Tr. 85). She has difficulties talking with people, and usually, within a minute of talking to them, she gets up and walks away. (Tr 85).

Plaintiff gets her medications from her primary care doctor; her doctor recommended that she see a psychiatrist or counselor, but she testified that she "won't." (Tr. 74-75). She testified that the last psychiatrist she went to, when she was in school, told her he didn't want to see her back; she has refused to go to one ever since, because he "wasn't too good." (Tr. 75).

The medical records show that during the relevant period, Plaintiff has received treatment for several physical conditions, including diabetes, back pain, and neck pain. She has also sought treatment from her primary care provider for anxiety and depression and has been prescribed medications for those conditions. The record contains opinion evidence relevant to Plaintiff's mental impairments from two sources. First, on March 15, 2018, state agency consultant Kim Dempsey, Psy.D., reviewed Plaintiff's medical records and opined that due to Plaintiff's major depressive disorder, Plaintiff would have moderate limitations in the ability to understand, remember, and carry out detailed instructions. (Tr. 128). Dr. Dempsey found that Plaintiff retains the ability to perform simple, repetitive tasks on a sustained basis. (Tr. 128). Second, the record contains two opinions from a pair of consultants, Dr. Steven B. Adams, Psy.D., and Diane White, M.A. (Tr. 721-28). Ms. White examined Plaintiff, and Dr. Adams reviewed, interpreted, and approved the data and diagnoses. (Tr. 724, 728). In July 2016, Dr. Adams and Ms. White evaluated Plaintiff and diagnosed her with major depressive disorder and generalized anxiety disorder (at which time he also ruled out post-traumatic stress disorder). (Tr. 728). They opined that she seemed able to understand and remember simple instructions and able to interact in moderately demanding

social situations, but she did not seem able to sustain her concentration and persistence on simple tasks and did not seem able to adapt to a typical work environment. (Tr. 728). In January 2019, Dr. Adams and Ms. White again evaluated Plaintiff; their diagnoses were the same except that they did not include a reference to post-traumatic stress disorder; their functional assessment was the same except that they found that she did *not* seem to be able to interact in moderately demanding social situations. (Tr. 724).

With regard to Plaintiff's medical and vocational records, the Court accepts the facts as set forth in the parties' statements of fact and responses. The Court will cite to specific records as necessary to address the parties' arguments.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

4

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R.

5

§§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since April 15, 2014, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, obesity, COPD, depression, and generalized anxiety disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 23-24). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb

>ladders, ropes, or scaffolds, occasionally climb ramps or stairs, and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have no sustained or concentrated exposure to fumes, gases, or dusts, and no exposure to hazards such as unprotected heights. The claimant can have no more than occasional exposure to extreme cold or extreme heat. The claimant can perform work limited to simple, routine, repetitive tasks and no work at a production rate pace, defined as work with an assembly line or conveyor belt.

(Tr. 26-27). At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 32). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, including order clerk, park machine tender, and optical goods assembler. (Tr. 33-34). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 15, 2014 through the date of the decision. (Tr. 34).

## V. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the record does not support the finding that Plaintiff could perform simple, routine, repetitive work on a full-time, competitive basis.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the

7

Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005))

      **B. The ALJ's Determination That Plaintiff Could Perform Simple, Routine, Repetitive Work on a Full-time, Competitive Basis is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC finding that Plaintiff could perform simple, routine, repetitive work on a full-time, competitive basis, is not supported by substantial evidence, given her consistent treatment for mental health impairments and the two opinions from consulting psychologist Dr. Adams indicating that she would not be capable of performing such work.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical

8

records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

After careful review of the record as a whole, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. First, as the ALJ reasonably noted, the RFC is supported by the objective findings in Plaintiff's treatment notes, which generally reflect normal mental status examinations. (Tr. 30, 32). At her treatment visits, Plaintiff did sometimes complain of depression and or anxiety; however, her mental status examinations were nearly always completely normal, showing that she was well groomed, with good eye contact, normal mood and affect, proper orientation, and intact judgment and insight. (Tr. 392, 410, 429, 516, 523, 552, 585, 590, 599, 604, 622, 635, 640, 645, 649, 653). Plaintiff suggests that these findings have limited probative value because they were made at physical appointments. That argument is unpersuasive. Although it is true that some of these findings were made at appointments to address physical problems, several were made when Plaintiff was seeking treatment for her mental health impairments from her primary care providers—the only providers from whom she sought such treatment. Moreover, it is the ALJ's duty—and not the Court's—to weigh the probative values of the various pieces of evidence in the record.

Second, as the ALJ noted, Plaintiff's symptoms were often described as "alleviated" or "improved" by her medication. (Tr. 30, 390, 408, 589, 598, 603). At some visits, she denied any anxiety or depression. (Tr. 428, 443, 464, 680). At others, her treatment providers noted that she had depression but that it "does not limit activities" and that she denied difficulty concentrating (Tr. 589, 598, 603, 616). To the extent that Plaintiff's condition was controlled by medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an

9

impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

Third, the ALJ reasonably considered that Plaintiff did not seek or receive specialized treatment, such as counseling, emergent care, hospitalization, or treatment from a psychiatrist, for her mental conditions. (Tr. 30, 32). Plaintiff received medications from her primary care provider, but there is no indication in the record that she sought, or received, any other treatment. Additionally, Plaintiff's primary care doctor recommended that she see a psychiatrist, but she did not do so. (Tr. 74-75). These facts weigh against a finding that Plaintiff's symptoms are as severe as she claims. *See* Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Plaintiff suggests in her brief that it was improper for the ALJ to consider Plaintiff's failure to seek specialized treatment without considering the reason for the lack of specialized treatment. Plaintiff points out that she testified that her primary care provider recommended that she see a psychiatrist or counselor, but she refused because she had "been to them before" and because the last psychiatrist she saw, when she was "in school," said he did not want to see her back and "wasn't too good." (Tr. 74-75). Plaintiff's argument is unpersuasive, for two reasons. First, the ALJ did discuss Plaintiff's testimony that she refused to see a psychiatrist, indicating that the ALJ did consider that testimony. (Tr. 27). Second, the Court cannot see how additional consideration

10

of Plaintiff's reason could have assisted Plaintiff. The hearing occurred in 2019, and the record indicates that Plaintiff was last in school in 1993, when she was in seventh grade—26 years earlier. The fact that Plaintiff had an experience over two decades earlier with a psychiatrist who "wasn't too good" is not a reasonable explanation for her refusal to follow her doctor's recommendation that she see a psychiatrist for her allegedly disabling mental impairments.

Fourth, the ALJ reasonably considered that Plaintiff's reported daily activities were inconsistent with a more restrictive mental RFC (Tr. 31). In her Function Report, Plaintiff denied any problems with understanding, following instructions, or getting along with others, and she reported managing her own finances. (Tr. 315-16, 318). It was reasonable for the ALJ to consider these statements, along with the rest of the record, in making the RFC assessment.

Finally, the ALJ reasonably considered the opinion of the state agency medical consultant, Dr. Dempsey, which was generally consistent with the mental RFC, and which the ALJ found "persuasive." (Tr. 31, 127-29). Although the opinion of a non-examining source does not, standing alone, constitute substantial evidence, it is not improper for the ALJ to consider such opinions along with the medical record as a whole. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). Here, the ALJ considered Dr. Dempsey's opinion along with the rest of the evidence, including the medical evidence dated after Dr. Dempsey conducted her review.

The Court also finds that the ALJ's assessment of Dr. Adams's opinions was consistent with the relevant regulations and was supported by substantial evidence. Because Plaintiff's claim was filed in January 2018, the ALJ was required to evaluate the medical opinions in her case pursuant to the new rules set forth at 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the

11

Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [Plaintiff's] medical sources." §§ 404.1520c(a), 416.920c(a). The ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations) (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." §§ 404.1520c(a)-(c), 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must explain how he or she considered the factors of supportability and consistency in the decision. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is "not required to," explain how he or she considered the remaining factors. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ discussed Dr. Adams's and Ms. White's opinions and found that the limitation to simple instructions was persuasive because it was consistent with the evidence. (Tr. 31-32). However, the ALJ found the remainder of the assessment "not persuasive," noting that the examiner's own notes—which indicated that Plaintiff seemed to exaggerate her symptoms—impaired the ensuing functional assessment, and that the rest of the record reflected little mental health treatment, no emergent care, and generally normal mental status examinations at physical

appointments. (Tr. 32). This discussion shows that the ALJ properly considered the supportability and consistency factors in assessing this opinion. .

The Court acknowledges that the ALJ could have decided to give more weight to the opinions of Dr. Adams and thus could have included additional mental limitations in the RFC, beyond those she did include. However, the ALJ's decision makes clear that she considered all of the relevant evidence in assessing Plaintiff's RFC, and it is not the role of this Court to reweigh that evidence. The ALJ's finding was supported by substantial evidence, and the Court cannot say that this decision was outside the "available zone of choice." *See Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

                                              SHIRLEY PADMORE MENSAH
                                              UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2022.